NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANDRE DENNIS,** | **Civil Action No. 14-2136 (JLL)** |
| **Petitioner,** | |
| v. | **OPINION** |
| **STEPHEN D'ILIO, et al.,** | |
| **Respondents.** | |

**LINARES**, Chief District Judge:

Presently before the Court is the petition for a writ of *habeas corpus* of Andre Dennis ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court manslaughter conviction (ECF No. 1). Following an order to answer, Respondents filed a response to the petition (ECF No. 16), to which Petitioner has replied. (ECF No. 23). For the following reasons, this Court will deny the petition and will deny Petitioner a certificate of appealability.

## I. BACKGROUND

In its opinion affirming in part and reversing in part the denial of Petitioner's petition for post-conviction relief, the Superior Court of New Jersey – Appellate Division summarized the background of this matter as follows:

> On April 20, 2007, [Petitioner, Andre Dennis], entered a guilty plea in Hudson County to aggravated manslaughter, an amended count of a multi-count indictment; the recommended sentence was eighteen years subject to eight-five percent parole ineligibility pursuant to the No Early Release Act (NERA), [N.J. Stat. Ann. §] 2C:43–7.2, to be served concurrent to the anticipated sentence on

1

[Petitioner]'s pending unrelated murder charges in Monmouth County.[1]

[Petitioner] was not sentenced until July 22, 2008, some fifteen months later, as the matter was held in abeyance awaiting disposition of the Monmouth County murder charge. Despite the delay, when this sentence was imposed, the Monmouth County charges had not been resolved.

Between plea and sentence, on September 12, 2007, [Petitioner], acting *pro se*, filed a motion to withdraw his guilty plea. That application was itself withdrawn prior to the sentence hearing.

[Petitioner] appealed his Hudson County sentence by way of the excessive sentence oral argument calendar. *See* [N.J. Court] Rule 2:9–11. The sentence was affirmed on March 11, 2010. [Petitioner]'s *pro se* petition for PCR followed on July 1, 2010. A counseled and a separate *pro se* brief were submitted in support of the petition.

The charges stem from the killing of Rayshawn Rush, who hours prior to the shooting had robbed [Petitioner] and his brother. After the robbery, the brothers returned to their home, retrieved handguns, and tracked Rush down. When he entered his guilty plea, [Petitioner] admitted to shooting Rush from a distance of about ten feet. [Petitioner]'s brother, in establishing the factual basis for his own guilty plea, said that five or six hours elapsed between the initial robbery and the shooting.

During his plea colloquy, [Petitioner] also said he did not "know if it was hours" between robbery and shooting. He did not contradict his trial attorney when the latter told the trial judge that he and [Petitioner] had discussed the defense of passion provocation and imperfect self-defense, and that "none of those things in this case applied ... by our reading of the discovery." When directly asked if he was abandoning all potential defenses, [Petitioner] agreed.

At the sentence hearing, [Petitioner] expressed his remorse for killing the victim, with whom he had been acquainted since childhood. He explained his conduct was influenced by his use of

---

[1] The Appellate Division noted in its opinion that Petitioner "was sentenced to life on the Monmouth County charge consecutive to this matter, after conviction by a jury [and] was also sentenced to a consecutive ten-year term on the related weapons offenses." *Dennis*, 2013 WL 2459864 at 1. n. 1.

PCP, and observed that he could have made a "better decision." He went on to state that his poor judgment not only cost the victim his life, but was going to cost him and his brother "a lot of time on [their lives] in jail[.]"

While sentencing [Petitioner], the trial judge reiterated that the Hudson County sentence would be concurrent to the Monmouth County term of imprisonment. He said that "the State has stood by the concurrent aspect, even if there is a consecutive sentence in Monmouth County."

At the PCR hearing, that judge noted that the Monmouth County sentence had not been made concurrent to the Hudson County sentence, and offered to resentence [Petitioner] so the sentences would run concurrently. After adjourning the matter so PCR counsel could speak with [Petitioner], [Petitioner] rejected the judge's offer, and the judge proceeded to address the merits of his PCR petition.

That judge found [Petitioner]'s arguments failed to meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 694[] (1984); *accord State v. Fritz*, 105 N.J. 42, 58 (1987). Because [Petitioner] had not established a *prima facie* case, the judge denied his request for an evidentiary hearing. With regard to [Petitioner]'s claim that counsel was ineffective by virtue of advising him to dismiss his *pro se* motion to withdraw his guilty plea, the court determined that even if [Petitioner] had pursued the application, he failed to meet the *State v. Slater* standard, including the absence of a colorable claim of innocence, lack of legitimate reasons for withdrawal, and the existence of a plea bargain. *See State v. Slater*, 198 N.J. 145, 157–58 (2009). The judge considered counsel's on-the-record statements that he and his client had discussed the defense of passion/provocation, as well as imperfect self-defense, after reviewing discovery, to effectively refute [Petitioner]'s allegation that counsel inadequately investigated the matter or conferred with him. The judge also deemed [Petitioner]'s claim that his attorney was ineffective because he had not filed a Miranda motion to lack merit, as the only basis for the suppression of his statements were that he had said "a lot of people" had been "bothering" him after he was taken into custody.

*State v. Dennis*, 2013 WL 2459864, at *1-2 (App. Div. June 10, 2013), *certif. denied*, 217 N.J. 285

(2014).

Petitioner appealed from the denial of his PCR petition, arguing both that the PCR court had erred in rejecting his claims without an evidentiary hearing and ineffective assistance of PCR counsel. *Id.* On appeal, the Appellate Division rejected Petitioner's contentions of ineffective assistance of counsel in all but one aspect – the Appellate Division did find that counsel had essentially failed in his duty to ensure Petitioner received the benefit of his bargain by making certain that Petitioner's manslaughter sentence would run concurrent to Petitioner's Monmouth County life sentence after Petitioner was sentenced in the Monmouth County matter. *Id.* at 2-4. Specifically, although Petitioner's Hudson County manslaughter sentence had been imposed concurrently, the Monmouth County sentence was thereafter imposed consecutively to the Hudson County sentence, and Petitioner's Hudson County trial counsel had failed to remedy this problem by seeking relief in Hudson County. *Id.* at 2. The Appellate Division therefore remanded Petitioner's case so that he could be resentenced in accordance with his plea deal in a manner which would ensure that Petitioner's Hudson County sentence would run concurrently with his Monmouth County life sentence as originally intended. *Id.* Petitioner's case was remanded and he was resentenced on November 22, 2013, to an eighteen year prison term to run concurrently to Petitioner's life sentence. (ECF No. 16-30). Petitioner's petition for certification as to his PCR petition was thereafter denied on February 4, 2014. (ECF No. 16-31). This matter followed.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of *habeas corpus* [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." A *habeas* petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of *habeas corpus* unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the *dicta*" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B. Analysis

In his petition, Petitioner raises numerous claims in which he asserts that he suffered ineffective assistance of trial, appellate, and PCR counsel. The standard which applies to these claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a

> "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).


**1. Petitioner's Plea Withdrawal Related Claim**

In his chief claim, Petitioner argues that his trial counsel proved ineffective in advising him to withdraw his pro se motion to withdraw his guilty plea. As part of that argument, Petitioner suggests that he had a colorable claim of innocence available to him at the time he withdrew his motion, and in so doing contradicts some of the statements he gave under oath in pleading guilty. A *habeas* petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics" which contradict those solemn statements is "subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

As the Appellate Division explained in rejecting this claim, motions to withdraw guilty pleas in New Jersey are governed by the standard announced by the New Jersey Supreme Court in *Slater.[2] See Slater*, 198 N.J. at 157-58; *see also Dennis*, 2013 WL 2459864 at 4. Under *Slater*,

---

[2] In his reply brief, Petitioner argues that the state courts should not have considered *Slater* because he originally filed his motion prior to the *Slater* opinion being decided. As the *Slater* court explained, however, *Slater* was a "distill[ation]" of the "similar, overlapping considerations" that the New Jersey courts had been using to decide motions to withdraw guilty pleas for several decades prior to Petitioner's motion, and prior case law had already required the first *Slater* factor – a colorable claim of innocence – insomuch as prior cases required a withdrawing defendant meet

courts must balance four factors in determining whether a criminal defendant should be permitted to withdraw his plea – "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." *Slater*, 198 N.J. at 157-58. "A bare assertion of innocence is insufficient to justify withdrawal of a plea [and a criminal defendant] must present specific, credible facts and, where possible, point to facts in the record that buttress their claim" to be entitled to withdraw their plea. *Id.* at 158. In rejecting Petitioner's ineffective assistance claim, the Appellate division found that Petitioner had "not made a colorable claim of innocence, and both he and his brother made sworn statements on the record inculpating" Petitioner in the shooting underlying his plea. *Dennis*, 2013 WL 2459864 at *4. The Appellate Division thus found that, because Petitioner had not presented a colorable claim of innocence, he could not meet the *Slater* standard, and counsel had not been ineffective in advising him to withdraw a meritless motion. *Id.*, *cf. United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("[c]ounsel cannot be ineffective for failing to raise meritless claims"); *see also Wets v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998).

---

his burden to present a plausible basis for withdrawing his plea accompanied by a good faith defense on the merits to the crime charged. *Slater*, 198 N.J. at 156-57. Thus, it appears that Petitioner is misguided in arguing that the state court's application of *Slater* was improper. *See, e.g., State v. Smullen*, 118 N.J. 408, 416-17 (1990) (requiring more than mere "late protestations of innocence" to warrant withdrawal of a guilty plea in the pre-*Slater* context and applying a nascent form of the *Slater* factors, including whether there was evidence in support of an assertion of innocence in the record, in affirming the denial of a motion to withdraw a guilty plea). Ultimately, the state courts determined that *Slater* was the proper lens for reviewing whether a motion to withdraw a plea would have been successful, and this Court must review Petitioner's claims in light of that determination of state law.

In his petition, Petitioner argues that the state courts misapplied the facts of his case because Petitioner asserted his innocence both in, and prior to, his motion to withdraw his guilty plea and that he therefore had a "colorable claim" of innocence. Petitioner misunderstands the requirement of a colorable claim of innocence – it is not enough that he asserted his innocence or decried his admissions of guilt, he instead must establish that the evidence in the record – including his statement to the police and his admissions during his plea hearing – provide adequate support for his assertions of innocence. *See Slater*, 198 N.J. at 178; *Smullen*, 118 N.J. at 418. The record here provides no such support. Instead, the record contains both Petitioner and his brother's admissions to their involvement in the shooting to police officers (*see* ECF No. 16-32 at 33-35; Discs 1-2 of the Recorded Statement of Antoine Dennis), and the following sworn testimony Petitioner provided in the factual basis for his guilty plea:

> [Counsel]: [Petitioner], I am going to direct your attention back to December 23rd in the year 2005, were you in Jersey City on that day?
>
> [Petitioner]: Yes.
>
> [Counsel]: And at some point in time during the course of that day did you come to find out that a Rayshawn Rush had robbed your brother and attempted to rob you?
>
> [Petitioner]: Yes.
>
> [Counsel]: And you and your brother went back to your house and got some handguns and then went to find Mr. Rush, correct?
>
> [Petitioner]: Yes.
>
> [Counsel]: And you found Mr. Rush, and where was that in Jersey City?
>
> [Petitioner]: On Bidwell and Martin Luther King Drive.
>
> [Counsel]: And when you came across Mr. Rush, you fired the weapon at him, correct?

[Petitioner]: Yes.

[Counsel]: And you've come to find out later that the shot that was fired did in fact hit him and he did in fact die, correct?

[Petitioner]: Yes.

[Counsel]: And you knew that by firing at him from such a short distance it possibly could have hit him?

[Petitioner]: Yes.

THE COURT: How far away would you say you were?

[Petitioner]: I don't know.

THE COURT: I mean in feet?

[Petitioner]: I don't know.

THE COURT: The distance of me to you?

[Petitioner]: Yeah, something like that.

THE COURT: That's about 10 feet.

[Counsel]: Judge, I have nothing further.

THE COURT: Sir, you're pleading guilty to acting in such a manner, by firing at him along with your brother, that it's in a manner that's under circumstances manifesting extreme indifference to the value of human life, a reckless, aggravated manslaughter, do you understand that?

[Petitioner]: Yes.

THE COURT: Are you guilty of that?

[Petitioner]: Yes.

THE COURT: And so that, as your brother had said, there was a period of maybe 5 or 6 hours between the initial incident and you going back, you understand that?

[Petitioner]: Yes.

THE COURT: Is that about right, do you recall – well, it wasn't at the same time, it was hours later?

[Petitioner]: No, it wasn't, I don't know if it was hours, but it was not at the same time.

THE COURT: All right. So you went through this idea of some kind of self-defense or imperfect self-defense, you've gone through this with your client?

[Counsel]: Judge, we discussed it, at some point my client even brought up passion provocation manslaughter, which we've talked about, and that that doesn't apply in this particular situation because there was a cooling off period of hours, as well as an imperfect self-defense, and none of those things in this case apply, Judge, by our reading of the discovery.

THE COURT: *State v. Mauricio* is the seminal case on passion provocation, where an individual out of Hoboken went back and shot the wrong person after being thrown out of a bar.

[Counsel]: Correct.

THE COURT: And there's a cooling off period, and you discussed all of these things?

[Counsel]: We did, Judge, and as I've indicated to [Petitioner], it could be a matter of moments, it doesn't even have to be hours.

THE COURT: Well, that would go into what the jury would have to decide, if it was even charged, but you understand, you've gone through all these defenses, you're abandoning them and pleading guilty to this, is that correct?

[Petitioner]: Yes.

THE COURT: Is anybody forcing you or threatening you?

[Petitioner]: No.

THE COURT: Do you wish to plead guilty?

[Petitioner]: Yes.

THE COURT: Anything else?

[The State]: No, your Honor, [that is] sufficient.

THE COURT: And you stipulate the cause of death?

[Counsel]: I do, Judge.

THE COURT: And so there was a mutual firing here by both [Petitioner and his brother]?

[Counsel]: That's correct, Judge.

[The State]: Yes.

(ECF No. 16-33 at 11-15).

The record of this matter thus contains Petitioner's sworn statements admitting his role in the death of the victim,[3] and nothing to the contrary other than Petitioner's bald assertion that he is innocent. Such a bald assertion, especially when it is in direct contradiction to Petitioner's own sworn statements in open court, is insufficient to establish a colorable claim of innocence, and is thus insufficient to warrant the withdrawal of a properly entered guilty plea in New Jersey. *See Slater*, 198 N.J. at 178; *Smullen*, 118 N.J. at 418. Because the facts in the record do not support Petitioner's bald assertion of innocence, and because Petitioner has otherwise failed to establish any entitlement to the withdrawal of his guilty plea, the state courts did not unreasonably apply the facts at hand in determining that Petitioner's motion to withdraw was fruitless. Likewise, because the state courts determined that Petitioner's withdrawal motion was meritless, the

---

[3] In his reply brief, Petitioner attempts to argue that his sworn statements during the plea hearing should not be held against him because he was only responding to leading questions and was thus not testifying. Although Petitioner did mostly respond to questioning, where he took issue with the questions regarding the amount of time between his brother being robbed and the shooting, Petitioner corrected counsel. Petitioner also directly provided the location at which he and his brother found the victim, and had an exchange with the trial court regarding the distance at which he fired upon the victim. Petitioner's contention that he was not giving a sworn statement but merely responding mechanically to leading questions is thus belied by the record and is without merit.

Appellate Division's conclusion that Petitioner's counsel was not ineffective in advising him to withdraw that motion is neither contrary to, nor an unreasonable application of, *Strickland* and its progeny, and Petitioner is therefore not entitled to *habeas* relief on his plea withdrawal ineffective assistance claim.

## 2. Petitioner's Investigation Related Claim

Petitioner also asserts that his trial counsel was ineffective insomuch as counsel failed to fully investigate his case and advise him in regards to the applicable defenses and lesser included charges. In order to make out a claim for *Strickland* prejudice in regards to counsel's alleged failure to investigate and prepare for trial, Petitioner "'must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.'" *Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir 2011) (a petitioner making inadequate investigation claims "has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) (same); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008). Because Petitioner's case was resolved by a guilty plea, a showing that the proceeding would have been different requires Petitioner to "show [that] the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384-85 (2012). A Petitioner makes this showing by establishing not only that he would not have pled guilty and would have instead proceeded to trial had he been properly advised,

but also that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner asserts, without providing actual evidentiary support, that had counsel more fully investigated, he would have found that there was "inadequate evidence" that Petitioner, as opposed to his brother and co-defendant, actually caused the death of the victim when the two brothers fired upon him, resulting in his death. Petitioner also asserts that counsel should have realized that passion/provocation was an applicable defense option because the victim was killed only "a couple of hours" after he robbed Petitioner's brother and Petitioner therefore had no cooling off period between the robbery and the killing of the victim. As to Petitioner's first contention, Petitioner himself admitted that the victim's death resulted from him and his brother firing upon and killing the victim, and Petitioner makes no "comprehensive showing" as to what evidence would have been discovered with further investigation that would have established that Petitioner could not have been responsible for the death of the victim. Petitioner has thus failed to show prejudice with regard to his claim that counsel should have more fully investigated the facts of his case as he has failed to provide any actual support for the contention that further investigation would have exposed some fatal flaw in the state's evidence.

Turning to Petitioner's second contention, that counsel failed to investigate the possibility of a passion/provocation defense, the record directly contravenes his contention. As the excerpt from Petitioner's plea hearing quoted above shows, counsel and Petitioner both acknowledged at that hearing that they had explored that defense, and that counsel had concluded that such a defense would have been ill advised in light of the several hours that passed between the robbery of Petitioner's brother and the time at which the two brothers fired upon the victim in this matter.

Thus, it appears that Petitioner's contention that he and counsel did not discuss passion/provocation as a lesser included offense or defense to the charges against him is in direct contravention of the record. Likewise, as counsel acknowledged at the plea hearing, any such defense would be substantially weakened as a passion/provocation defense requires a defendant to show that the death of the victim was the result of an incident in which the defendant was subject to "(1) reasonable and adequate provocation; (2) [had] no cooling-off time in the period between the provocation and the slaying; (3) [the] defendant . . . actually was impassioned by the provocation; and (4) [the] defendant . . . did not cool off before the slaying." *State v. Josephs*, 174 N.J. 44, 103 (2002). As Petitioner admits in his current petition, several hours passed between the provocation in this matter –the robbery of Petitioner's brother – and counsel's opinion that such a defense was not viable in light of that amount of cooling off time was entirely reasonable. Thus, the record contradicts Petitioner's assertion that counsel did not consider possible lesser included charges and defenses, and the facts of Petitioner's case do not show that counsel's conclusion that passion/provocation was not viable was in any way erroneous. Petitioner has thus utterly failed to show deficient performance or *Strickland* prejudice, and his claim is without merit. The Appellate Division's rejection of Petitioner's claim was therefore not an unreasonable application of Supreme Court precedent to the facts of Petitioner's case, and Petitioner is not entitled to *habeas* relief on this claim.

### 3. Petitioner's *Miranda* Related Claim

Petitioner next asserts that his trial counsel proved ineffective in failing to make a motion to suppress his statement to the police prior to his pleading guilty. Petitioner asserts that he invoked his right to remain silent during questioning, and that no further questioning should have occurred

after that invocation. As the Supreme Court has explained, an invocation of one's right to remain silent must be "unambiguous." *Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010). Where a criminal defendant makes statements regarding either his right to counsel or to remain silent that are "ambiguous or equivocal," the police are not required to end their interrogation, nor are they required to ask questions clearly establishing whether the defendant wished to invoke his rights. *Id.* Where a criminal defendant has not invoked his right to remain silent, any statements he makes during the course of a custodial interrogation will be admissible against him at trial where the defendant "knowingly and voluntarily waived [his *Miranda* rights] when making [his] statement." *Id.* "The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (internal quotations omitted). Waiver need not be established through an express or formal statement that the rights are being waived, but may be made by implication so long as the facts show that the defendant was informed of his rights to counsel and to remain silent, understood those rights, and thereafter voluntarily made a statement. *Id.*

In support of his argument that counsel should have filed a motion to suppress his statement, Petitioner argues that he invoked his right to remain silent when he told the questioning officer, after having his *Miranda* rights explained to him, that a "lot of people been bothering" him about the death of the victim in this matter. Petitioner argues that this should have been sufficient to end the questioning at that time. The underlying problem with that assertion is that Petitioner's statement that he was being bothered about the case, in context, did not appear to be an invocation of his right to remain silent. Indeed, in his video recorded statement, Petitioner clarifies that

statement by saying that he was receiving phone calls from blocked numbers regarding the case, and, immediately after making that statement to the detective interviewing him, Petitioner chose to sign a *Miranda* rights waiver form. Petitioner then gave a recorded statement to the police regarding his involvement in the shooting. Petitioner's assertion that his statement regarding being bothered about this case was an invocation of his right to remain silent is thus belied by the record – not only was it not a clear and unambiguous invocation of his rights in context, but it was also only *after* he made that statement that Petitioner chose to sign the *Miranda* form, waive his right to remain silent, and make a statement to the police regarding the case. As explained by the Appellate Division, any motion to suppress the statement based on this argument would have been utterly without merit as the recording of Petitioner's statement clearly shows that Petitioner was provided with the appropriate explanation of his *Miranda* rights, made no unambiguous statements invoking his right to remain silent, and after making the challenged declaration to the police chose to sign the waiver form and give a statement to the police. The facts therefore fail to establish a basis for the suppression of his statement, and counsel therefore could not have been ineffective in choosing not to file a motion to suppress his statement. *Aldea*, 450 F. App'x at 152; *Wets*, 228 F.3d at 203; *Parrish*, 150 F.3d at 328-29.

### 3. Petitioner's Appellate Claims

Petitioner also attempts to bring multiple claims of ineffective assistance of his appellate counsel, asserting that counsel failed to consult with him as to what issues to raise and that counsel therefore failed to raise numerous ineffective assistance of counsel claims Petitioner wished had been raised on direct appeal. While the actions of appellate counsel are subject to the same ineffective assistance standard applicable to trial counsel claims, *see Smith v. Robbins*, 528 U.S.

259, 285 (2000), "it is a well established principle . . . that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel need not raise every nonfrivolous claim a defendant desires to pursue. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Because the chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success, *id.* at 753; *Smith v. Murray*, 477 U.S. 527, 536 (1986), the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

In his various claims of ineffective assistnace of appellate counsel, Plaitniff essentially argues that, because appellate counsel did not consult with him regarding what grounds to raise on appeal, appellate counsel failed to raise various claims of ineffective assistance of trial counsel on direct appeal and failed to challenge the sufficiency of Petitioner's plea. The claims Petitioner asserts counsel should have raised are as follows: 1) that trial counsel did not adequately meet with him to dicuss his case; 2) that trial counsel failed to provide Petitioner with all of the discovery; 3) that trial counsel failed to adequately investigate Petitioner's case; 4) that trial counsel failed to seek a *Miranda* hearing; 5) that trial counsel misadvised him to withdraw his motion to withdraw his guilty plea; 6) that trial consel failed to advise him that Monmouth county could ignore his concurrent sentence and sentence him consecutively; and 7) that trial counsel failed to explain to Petitioner that his guilty plea could be used to impose an enhanced sentence in his Monmouth County case as Petitioner would have a manslaughter charge on his record. Petitioner also asserts that both trial and appellate counsel were ineffective in failing to raise a claim that Petitioner's guilty plea was not supported by an adequate factual basis. Initiatlly, the Court notes that

Petitioner's desired claims regarding the plea withdrawal motion, the failure to move for suppression of his statement, and the failure to fully investigate and explain Petitioner's case to him fail for the reasons presented above, *i.e.*, Petitioner has failed to show that trial counsel was ineffective in those matters sufficient to warrant relief, and appellate counsel could therefore not have been ineffective in failing to raise those claims on direct appeal.

Additionally, the Court notes that Petitioner's assertion that appellate counsel should have raised these various ineffecitve assistance of counsel claims also ignores the procedural posture of Petitioner's appeal. The New Jersey courts have "expressed a general policy against enteretaining ineffective assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." *State v. Castagna*, 187 N.J. 293, 313 (N.J. 2006) (quoting *State v. Preciose*, 129 N.J. 451, 460 (1992)). A New Jersey appellate court will only permit such a claim to be raised on direct appeal where the "trial itself provides an adequately developed record upon which to evaluate [the] defendant's claims." *Id.* All of the ineffective assistance of counsel claims Petitioner wishes had been raised on direct appeal – counsel's failure to communicate with him, his failure to fully explain to him his case, the failure to provide him all discovery, the failure to conduct a more thorough investigation, the failure to adequately advise him regarding his withdrawal motion, the failure to file a *Miranda* suppression motion, and the failure to properly advise Petitioner regarding the potential sentencing issues in Monmouth county concern information outside of Petitioner's plea record, and the merits of those claims require consideration outside of the record which was available on direct appeal, with the possible exception of Petitioner's proposed *Miranda* claim. Thus, with the possible exception of the *Miranda* claim, which is clearly without merit, all of these claims that Petitioner wished had been

raised on direct appeal were not actually cognizable on direct appeal, and appellate counsel was therefore not ineffecitve in failing to raise them for that reason as well.

Turning to Petitioner's argument that both trial and appellate counsel were ineffective in failing to challenge the sufficiency of the factual basis for Petitioner's plea, Petitioner essentially argues that his guilty plea was improper because he failed to provide an adequate factual basis insomuch as there "was no evidence" that Petitioner acted recklessly or was responsible, in and of himself, as opposed to in concert with his brother, for the death of the victim. Although Petitioner asserts that the trial court should have rejected his plea based on his post-sentence reading of the evidence against him had his case proceeded to trial, Petitioner completely fails to take into account the information he provided in his plea allocution. Under New Jersey law, a person commits aggravated manslaughter where he "recklessly causes death under circumstances manifesting extreme indifference to human life." N.J. Stat. Ann. § 2C:11-4(a)(1). Aggravated manslaughter thus requires a showing that the defendant "was aware of and consciously disregarded a substantial risk of death" and that his actions caused the death of the victim. *See State v. Jenkins*, 178 N.J. 347, 362 (2004).

During his plea allocution, quoted at length above, Petitioner admitted that he and his brother sought out the victim and then fired upon the victim from about ten feet away, striking him, and that these gunshots resulted in his death. Petitioner also specifically stated that he was aware that the bullets could hit the victim, and that he was guilty of causing the victim's death through actions showing extreme indifference to the victim's death. Thus, Petitioner's plea allocution more than sufficiently supports his guilty plea as it establishes that Petitioner, alongside his brother, hunted down the victim, shot at him from close range knowing the vicitm could be hit and die, struck him with more than one bullet, and that the victim died as a result of those wounds.

20

Any challenge by trial or appellate counsel as to the sufficiency of the plea allocution would therefore have been fruitless, and niether counsel was ineffective in failing to challenge the sufficiency of the plea.

Finally, Petitioner asserts that appellate counsel should have argued that his trial counsel failed to explain to him that the Monomouth County Court could ignore his concurrent sentence in this matter and could thus give Petitioner a consecutive sentence, and that trial counsel failed to advise Petitioner that he might be subject to an enhanced sentence in Monmouth County. Petitioner also asserts this as a standalone basis for ineffecitve assistance of trial counsel. The Court first notes as to this claim that any prejudice Petitioner suffered due to counsel's failure to ensure that Petitioner ultimately received a concurrent sentence as promised was completely alleviated when the Appellate Division remanded his PCR proceeding for the entrance of an amended judgement clearly establishing that his manslaughter sentence was to run conccurrent with his Monmouth County life sentence, which had always been the intention of the sentencing judge in this matter. As to the second part of his claim, that counsel should have advised him that his manslaughter guilty plea could be used to enhance his sentence in Monmouth County, Petitioner has identified no Supreme Court case which required that counsel at the time of Petitioner's guilty plea advise Petitioner that a guilty plea could result in an enhanced sentence in a completely different case should he ultimately be convicted in that separate, later case. As Petitioner has therefore failed to identify any Supreme Court case which was contrary to the Appellate Division's finding that Petitioner's claim was without merit as counsel was not deficient in this respect, and as this Court is not aware of any Supreme Court case to which the Appellate Division's decision is contrary or which the Appellate Division unreasonably applied, Petitioner's contention that counsel was required to inform him he might later be subject to enahnced sentences

in entirely separate, later cases based on his guilty plea is without merit, and he is not entitled to habeas relief on that basis, whether raised as ineffective assistance of trial counsel or ineffective assistance of appellate counsel in failing to raise such a claim on direct appeal.

**4. Ineffective Assistnace of PCR Counsel**

In his final group of ineffective assistance claims, Petitioner asserts that he suffered ineffective assistance of PCR counsel during his state collateral review proceedings. Pursuant to 28 U.S.C. § 2254(i), however, the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief" in a *habeas* proceeding challenging a state court conviction. Petitioner's ineffective assistance of PCR counsel claims therefore provides no basis for habeas relief.

**5. Petitioner's Hearing Claims**

Finally, Petitioner contends that the state PCR courts erred in refusing to hold an evidentiary hearing and in denying certain of his claims without a full written opinion addressing the deficiencies of his claims. It also appears that Petitioner contends that he is entitled to an evidentiary hearing on his claims in this court. Generally, 28 U.S.C. § 2254(e)(2) bars habeas petitioners who are challenging a state court conviction from receiving an evidentiary hearing if the petitioner failed to develop the factual record underlying his claims in the state court. The statute does not bar a hearing, however, where the petitioner presented a potentially meritorious claim for relief and "unsuccessfully sought an evidentiary hearing in the PCR court and unsuccessfully appealed from the denial of his PCR petition" as those actions indicate that the petitioner was not responsible for failing to develop the factual record and was instead denied the

ability to do so by the state courts. *Branch v. Sweeney*, 758 F.3d 226, 241 (3d Cir. 2014). "In cases where an applicant for federal *habeas* relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007)). A court's decision whether to hold a hearing under those circumstances is subject to two considerations:

> First, in determining whether or not to hold an evidentiary hearing, courts should "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474[]. In other words, courts considering the appropriateness of an evidentiary hearing should determine whether the petition presents a *prima facie* showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim. *See, e.g., Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991); *Smith v. Freeman*, 892 F.2d 331, 338 (3d Cir. 1989). The reasons underlying such a consideration are self-evident-given "AEDPA's acknowledged purpose of reducing delays in the execution of state and federal criminal sentences," *Schriro*, 550 U.S. at 475[] (quotation marks, citations, and brackets omitted), a court should be reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose pleadings are factually insufficient to suggest any entitlement to *habeas* relief. *See, e.g., Campbell*, 515 F.3d at 184 ("bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing") (quoting *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987)); *Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 858-59 (10th Cir. 2005) (to warrant an evidentiary hearing, a *habeas* petitioner's "factual allegations must be specific and particularized, not general or conclusory") (quotation marks and citation omitted).
>
> Second, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 474[]. That is, even if the factual allegations in the *habeas* petition

are sufficient to make out a *prima facie* claim for *habeas* relief, a district court may decline to convene an evidentiary hearing if the factual allegations are "contravened by the existing record." *Id.* (citation omitted); *see also Campbell*, 209 F.3d at 290. As the Supreme Court has explained, "[i]f district courts were required to allow federal *habeas* applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts." *Schriro*, 550 U.S. at 475[].

*Palmer*, 592 F.3d at 393. These considerations are essentially mirrored in the New Jersey state courts, which permit a hearing only where the petitioner can make out a *prima facie* claim for relief. *See, e.g., State v. Preciose*, 129 N.J. 451, 459-60 (1992); *see also Ellison v. Rogers*, 484 F.3d 658, 660-61 (3d Cir. 2007).

In Petitioner's underlying PCR action, the state PCR court declined to hold a hearing as it found that all of Petitioner's claims were without merit. The Appellate Division likewise rejected Petitioner's claim that he should have received an evidentiary hearing as it found that all of his claims, other than his claim that he should have received concurrent sentences on which the Appellate Division granted relief, were without sufficient merit to warrant detailed consideration. *Dennis*, 2013 WL 2459864 at *3-4. As explained in detail above, none of the claims Petitioner raises states a *prima facie* claim for *habeas* relief, and for that reason he would not be entitled to a hearing before this Court even if this Court were to assume, *arguendo*, that Petitioner was not responsible for the failure to develop the factual matter in this case. Petitioner has thus failed to establish that he is or was entitled to a full evidentiary hearing on his claims, and his contention that he should receive such a hearing is without merit.

In his final claim, Petitioner asserts that his right to Due Process was impinged by the failure of the state PCR court to provide him with a full statement of reasons for the denial of his

*pro se* claims, which largely overlapped the claims raised by counsel which the PCR court addressed in detail. As the Appellate Division noted in its opinion affirming in part and reversing in part the PCR court's decision, the state PCR court addressed Petitioner's claims "in the main," and the Appellate Division, in any event, addressed all of Petitioner's claims, even if some of those decisions required little discussion because "all [of the *pro se* points were] so lacking in merit as to warrant further discussion." *Id.* at *4. Petitioner therefore did receive a full consideration of his claims by the Appellate Division, and an explanation of the reason for their rejection, and any failure of the trial level PCR court to discuss his claims in more detail was thus entirely harmless. *Fry v. Piller*, 551 U.S. 112, 116 (2007) (claims of even constitutional error do not warrant *habeas* relief "unless [the alleged errors] had a substantial and injurious effect or influence" in the outcome of the petitioner's case); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). All of Petitioner's claims are therefore without merit, and his habeas petition is therefore denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a *habeas* proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's *habeas* petition is without merit, Petitioner has failed to make a substantial showing of the denial of a constitutional right and Petitioner's *habeas* petition

is inadequate to deserve encouragement to proceed further. As a result, this Court will deny Petitioner a certificate of appealability.

## IV. CONCLUSION

For the reasons expressed above, Petitioner's petition for a writ of *habeas corpus* is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

JOSE L. LINARES
Chief Judge, United States District Court